COLLATERAL FACTORS CORP., Respondent, *v.* MILTON J. MEYERS, Appellant. COLLATERAL FACTORS CORP., Appellant, *v.* JACOB SELTZER, Respondent.

First Department, April 18, 1972.

*Stanley Plesent* of counsel (*Harvey Horowitz* and *Victor J. Rubino* with him on the brief; *Squadron, Gartenberg, Ellenoff & Plesent,* attorneys), for Milton J. Meyers, appellant.

*Jay Greenfield* of counsel (*Selvyn Seidel* with him on the brief; *Paul, Weiss, Rifkind, Wharton & Garrison,* attorneys), for Collateral Factors Corp.

*Leonard S. Baum* of counsel (*Phillips, Nizer, Benjamin, Krim & Ballon,* attorneys), for Jacob Seltzer, respondent.

*Per Curiam.* These appeals present, once again, the question of whether the defendants transacted any business within the State rendering them subject to jurisdiction pursuant to CPLR 302 (subd. [a], par 1). Plaintiff brings these actions seeking recovery on promissory notes executed and delivered by the defendants to plaintiff's assignor Black Watch Farms, Inc. (hereinafter referred to as Farms). Defendants purchased pure-bred cattle from Farms, delivering as payment a series of promissory notes. In connection with the purchase and as part of one integrated transaction defendants entered into a breeding and maintenance agreement with Farms (described in the agreement as a New York corporation) pursuant to which Farms was to perform various functions with

relation to the care and breeding of the cattle. The agreement provided for an initial term of 10 years renewable for further periods totaling an additional 10 years. Promissory notes were also issued as payment for the breeding and maintenance services. It appears that the defendants are non-residents and that the notes and agreements were executed by defendants in the States of their residence. It also appears that the negotiations culminating in the sale took place at the residence of each of the defendants.

In determining whether the defendants are subject to jurisdiction under the long-arm statute — CPLR 302 (subd. [a], par. 1) — the entire transaction must be considered. The cattle were purchased for investment purposes and the agreements provided for an extended and continuing relationship between the parties. In fact, it appears that for a period of about two years, Farms performed the required services. While defendants' cattle were not kept in New York, services with respect to the cattle and to the ultimate success of the investment were performed in New York. Decisions concerning breeding were made in New York; records were kept in New York; artificial insemination procedures were effected in New York; and regular advice was transmitted from the New York office to the cattle owners by reports and newsletters. Moreover, the services performed by Farms were in meaningful respects under the contractual control of the defendants. The maintenance agreement, for example, gave defendants the right to designate which sire would be used for breeding. Additionally, Farms was obligated to meet periodically with the cattle owners to give its advice relative to maintenance of the cattle. There was further provision with respect to the sale of any cattle and in connection therewith, Farms was to act as agent for the cattle owners.

We believe that defendants have engaged in purposeful activities in this State in connection with the matter in suit, subjecting them to jurisdiction (*Elman* v. *Belson,* 32 A D 2d 422). Services of a significant nature were performed in New York for and at the defendants' request. And as indicated, the defendants, pursuant to the agreement, retained measures of authority and control over Farms' performance. The services performed by plaintiff pursuant to the agreement may therefore be attributable to the defendants for jurisdictional purposes (see *Parke-Bernet Galleries* v. *Franklyn,* 26 N Y 2d 13). As stated in *De Nigris Assoc.* v. *Pacific Air Transp. Int.* (38 A D 2d 363, 364–365) plaintiff was " the agent and representative of the

defendant and not a principal nor an independent contractor in respect of the services within the holdings of *Glassman* v. *Hyder* (23 N Y 2d 354); *Standard Wine & Liq. Co.* v. *Bombay Spirits Co.* (20 N Y 2d 13); *McKee Elec. Co.* v. *Rauland-Borg Corp.* (20 N Y 2d 377) and *Kramer* v. *Vogl* (17 N Y 2d 27) cited and distinguished in *Parke-Bernet Galleries* v. *Franklyn (supra).*"

Accordingly, in appeal in first above-entitled action the order denying the motion to dismiss the complaint should be affirmed without costs or disbursements to either party. In appeal in second above-entitled action, the order granting the motion to dismiss the complaint should be reversed on the law and the motion denied without costs or disbursements to either party; the order denying the motion for leave to serve a supplemental complaint should be reversed on the law and the motion granted without costs or disbursements to either of the parties. The appeal from order denying reargument should be dismissed.

STEUER, J. (dissenting). The two appeals, here heard together, have one common question. In both cases plaintiff sues as the assignee of certain notes transferred to it by Black Watch Farms, Inc. (hereinafter Farms), a New York resident. The defendant Meyers, a Massachusetts resident, executed his notes in Massachusetts and the defendant Seltzer, a New Jersey resident, executed his notes in New Jersey. The notes were given for the purchase of cows in a herd and in pursuance of a contract whereby Farms agreed to maintain the cows, arrange for their breeding and for the sale of the offspring. All negotiations were at the solicitation of Farms and took place at the residence of defendants. Farms had several herds which were maintained in several States, not including New York. It did have a central office in Wappingers Falls, New York, where all records were kept, decisions were made as to breeding, and certain processes in connection with artificial insemination were carried out. Defendants were served in their home States purportedly in compliance with CPLR 302 (subd. [a], par. 1). The question is whether the service was proper. One Special Term held in the *Meyers* case that the service was valid, and another Special Term in the *Seltzer* case that it was not. While the majority holds to the contrary, we believe the service to be invalid and that the appeals should be disposed of accordingly.

The test applied is whether the defendant has engaged in some purposeful activity in this State in connection with the matter in suit (*Elman* v. *Belson*, 32 A D 2d 422). Here the plaintiff has pointed to no activity in this State by these defendants, pur-

poseful or otherwise, and it must be assumed there was none. All that the plaintiff relies on are Farms' activities. Where such activities amount to acting as agent or representative of the defendant they may rightfully be considered as activities by the defendant himself. Where the acts do not amount to representation and are merely the performance of what the plaintiff did in order to carry out its obligation, such performance does not subject the defendant to jurisdiction here (*Ferrante Equip.* v. *Lasker-Goldman,* 26 N Y 2d 280; *Glassman* v. *Hyder,* 23 N Y 2d 354).

MARKEWICH, J. P., KUPFERMAN and TILZER, JJ., concur in *Per Curiam* opinion; STEUER, J., dissents in an opinion, in which NUNEZ, J., concurs.

Order, Supreme Court, New York County, entered on April 20, 1971, affirmed, without costs and without disbursements.

Order, Supreme Court, New York County, entered on October 18, 1971, granting defendant's motion to dismiss the complaint, reversed, on the law, without costs and without disbursements, and the motion denied; order of said court, entered on November 11, 1971, reversed, on the law, without costs and without disbursements, and the motion granted; and appeal from order of said court, entered on October 18, 1971, denying reargument, dismissed, without costs and without disbursements.