Max **MENDELSON**, Plaintiff,

v.

Charles **FLEISCHMANN** and James H. **Eastland, Jr., Defendants.**

No. 73 Civ. 652.

United States District Court,
S. D. New York.

May 16, 1973.

Dreyer & Traub, New York City, for plaintiff.

Gold, Farrell & Marks, New York City, for defendant.

James H. Eastland, Jr., pro se.

MEMORANDUM AND ORDER

BRIEANT, District Judge.

Plaintiff, a citizen of California presently residing in Spain, is a licensed real estate broker in New York. He brought an action in Supreme Court, New York County, to recover brokerage

commissions in excess of $10,000.00 from defendants. Defendants, residents and individual citizens of Ohio, removed the action to this Court on diversity grounds [28 U.S.C. § 1441(b)].

They now move, alternatively, to dismiss for lack of personal jurisdiction over them, and improper venue, or to transfer to the Southern District of Ohio pursuant to 28 U.S.C. § 1404(a) for the convenience of the parties and witnesses and in the interests of justice.

Jurisdiction of the person was obtained in state court pursuant to New York CPLR § 302(a)(1), which reads in part as follows:

"§ 302. Personal jurisdiction by acts of non-domiciliaries

(a) Acts which are the basis of jurisdiction. As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent:

1. transacts any business within the state."

Defendants owned or controlled real property (the "Mercantile Library Building") located in Ohio. Part of that property was ultimately, on July 3, 1969, leased in writing for a term of years to Garfinckel, Brooks Brothers, Miller & Rhoads, Inc. (hereinafter "Brooks"). In that lease plaintiff was recognized as broker, and landlords covenanted with the tenant to pay his brokerage fee in accordance with a separate written agreement. This brokerage fee is the subject of the first cause of action pleaded.

Thereafter, the landlord and tenant agreed upon a novation, by which a new lease, on different terms, for a different parcel (the "Formica Building"), also owned by defendants was leased to Brooks instead of the original store site. The new lease contains the same recital concerning landlords' obligation to plaintiff for brokerage.

With what seems unseemly greed, plaintiff claims separately and additionally for this compensation in his second cause of action pleaded. Whether he may get paid twice, because the parties changed their minds and renegotiated after the first lease was signed is not relevant to the jurisdictional question.

Defendants state without contradiction that the *brokerage* agreement was not made in New York. They concede, grudgingly, on oral argument, that in the course of performance, plaintiff had one meeting in New York, characterized as "the brief January 30 trip to New York."

Undisputed documents belie defendants' contention that the trip to New York was of no significance. On January 8, 1969 defendant Eastland, then trustee for co-defendant Fleischmann in respect to the realty, wrote plaintiff (Exhibit H annexed to Brandon affidavit) in part as follows, after setting forth in detail proposed financial terms for a lease with Brooks:

"As you know, we have tried to work out the many possible variations in order to arrive at a proposition which is economically feasible for both of us, and the one presented here is certainly the only one which we can possibly live with.

As I have pointed out to you Mr. Fleischmann is certainly interested in working out an arrangement with Brooks Bros. and he suggests that you bring Mr. MacIntosh to Cincinnati for a closer look at the building and a personal meeting in order to conclude the lease arrangement.

Please let us hear from you and we will work out a mutually agreeable date for a meeting."

Thereafter, on January 30, 1969, such a "personal meeting" was held by pre-arrangement at 346 Madison Avenue, in this City. That was the office of one MacIntosh, a Brooks vice-president who had negotiating authority for the tenant.

Plaintiff and both defendants attended that meeting. Lease terms were negotiated. Plaintiff prepared the usual broker's memorandum of those discussions (Exhibit I) setting forth his understanding of "the issues discussed and/or areas in which informal agreement was reached." Discounting usual brokers' optimism, these terms set forth in a three page single spaced typewritten proposed agreement comprise considerable detail, and are indicative of substantial and meaningful performance by the broker, and more than a mere "brief trip to New York" by defendants. True it is that further negotiations were pursued elsewhere, up until the day the lease was signed in Ohio, by defendants, as the last to sign.

On February 12, 1969, plaintiff's memorandum was, on Eastland's instructions, delivered to a New York lawyer with instructions to prepare a draft of lease. On February 12, 1969, purportedly on the authorization of Eastland, plaintiff wrote MacIntosh in New York a letter, not numbered, but attached to Exhibit K.

The New York lawyer on March 19, 1969 mailed the proposed lease to defendant Eastland in Cincinnati.

The documents compel an inference that a material part of the performance of the brokerage contract did in fact take place in New York. The scope of the broker's work is to produce a ready, willing and able customer on terms satisfactory to the owner. This contemplates negotiation. The place for such performance, provided it is not purely fortuitous is important for jurisdictional purposes.

Selection of New York as a place for the negotiating conference and meeting of January 30, 1969 was in no sense "purely fortuitous". [Cf. Hunter v. Calvaresi, 45 Misc.2d 96, 256 N.Y.S.2d 356 (1964).] It was the place where MacIntosh, the Brooks vice-president who had the authority to negotiate for the tenant, maintained his office, and was also the place where Brooks' lawyer, who was to draft the formal lease, had his office. Defendants do not deny

that the performance of the brokerage contract in New York was purposely envisioned, nor could they, since they were individually present in New York, and participating with plaintiff in negotiations at the January 30th meeting. By attending without objection the meeting called by plaintiff, they accepted the benefits of his activities as broker and consented to or acquiesced in his performance in New York.

The January 30th meeting, apparently the last face-to-face meeting attended by plaintiff, represented completion of performance on his part. Defendants by their presence there, and participation in the broker's negotiation with MacIntosh in New York "transacted business in the State of New York" within the meaning of New York CPLR § 302(a). Personal jurisdiction in New York Supreme Court was proper. American Eutectic Welding Alloys Sales Co. v. Dytron Alloys Corp., 439 F.2d 428 (2d Cir. 1971).

As stated by Judge Dooling in ECC Corporation v. Slater Electric, Inc., 336 F.Supp. 148, 152 (1971):

" . . . if the corporate intention is through personnel of executive substance to come to the state to effect a purposeful and important activity on the corporation's part, and by doing so such personnel significantly advance the making of a corporate contract of importance, that activity and presence suffice as a basis for a later exercise of personal jurisdiction by the State of New York over the foreign corporation with respect to matters that can genuinely be said to arise out of the resultant contract notwithstanding that the signing of the contract takes place later at the domicile of the out of state corporation."

We have co-extensive jurisdiction under Rule 4(e)(1), F.R.Civ.P.

Brooks signed in New York. When it did so, plaintiff had performed as broker, and his cause of action arose in New York for purposes of venue.

■ "Substantial preliminary negotiations through high level personnel" and "purposeful acts performed by the appellant in the State in relationship to the contract, albeit preliminary or subsequent to its execution" are adequate to invoke the New York long-arm statute. Longines, Wittnauer Watch Co. v. Barnes, 15 N.Y.2d 443, 261 N.Y.S.2d 8, 209 N.E.2d 68. See also Liquid Carriers Corp. v. American Marine Corp., 375 F.2d 951, 955 (2d Cir. 1967) ("defendant's agents or property have been physically present in the state and have received the protection of New York laws"); Collateral Factors Corp. v. Meyers, 39 A.D.2d 27, 330 N.Y.S.2d 833 (1st Dept. 1972) "defendants have engaged in purposeful activities in this State in connection with the matter in suit . . . [s]ervices of a significant nature were performed in New York for and at the defendants' request."

In Glassman v. Hyder, 23 N.Y.2d 354, 296 N.Y.S.2d 783 (1968) the Court refused to invoke jurisdiction under the statute in a case similar factually, where the broker's customer did not come into New York physically, to negotiate, but did so only by mail and telephone. But the New York Court of Appeals held (p. 362 of 23 N.Y.2d, 296 N.Y.S.2d):

> "In determining whether the owners' activities constitute the transaction of business in New York, the court should weigh not only the owners' correspondence with the broker, but must also consider the owners' negotiations with the prospective purchaser. The two sets of negotiations are so closely related as to justify viewing them as a single entity. The acts of the independent broker within New York should not, however, be attributed to the owners so as to become acts of the owners in New York (see Millner Co. v. Noudar, Lda., 24 A.D.2d 326, 266 N.Y.S.2d 289)." (At p. 789 of 296 N.Y.S.2d)

The objection to personal jurisdiction lacks merit.

■ At the present juncture no basis appears to justify transfer of the action to Ohio for convenience of the parties or witnesses, as requested alternatively. Plaintiff's original choice of forum is entitled to some weight. Defendants did not find New York City too inconvenient for traveling from Cincinnati, when they wanted to meet with MacIntosh to advance their business interests.

MacIntosh and the New York lawyer are probably the key disinterested witnesses in the case; their offices are in New York. Expert witnesses' convenience is entitled to slight weight.

The court denies the application to transfer at this time, without prejudice to renew when the matter is at issue, and more is known about the defendants' witnesses and their convenience, than the mere allegation that they "might" testify, without reference to the materiality or necessity of their proof.

The motion to dismiss for want of personal jurisdiction is denied.

So ordered.

## SUPPLEMENTAL MEMORANDUM

On the Court's own motion, the above entitled action is hereby referred to the Hon. Sol Schreiber, a Magistrate of this Court, for all pre-trial purposes. The Magistrate shall call a prompt conference for the purposes of scheduling prompt compliance by all parties with discovery obligations, and report.