**UNITED STATES STEEL CORPORA-TION et al., Plaintiffs,**

v.

**MULTISTATE TAX COMMISSION et al., Defendants.**

**No. 72 Civ. 3438 (CHT).**

United States District Court,
S. D. New York.

Sept. 17, 1973.

White & Case, New York City (Thomas McGanney, New York City, of counsel), for plaintiffs.

Jerome R. Hellerstein, Hellerstein, Rosier & Rembar, New York City, for defendants.

## MEMORANDUM

TENNEY, District Judge.

In the instant action defendants, not having filed an answer, move pursuant to Fed.R.Civ.P. 12 to vacate the service of the summons and complaint and to dismiss the action on the grounds that this court lacks jurisdiction over the subject matter of the action and the persons of the defendants, and that the complaint fails to state a claim upon which relief can be granted. For the reasons cited *infra*, the motions are denied in all respects.

### I. Background

In response to the widespread recognition that, as applied to the multistate

corporations which dominate the nation's economy, traditional state tax administration was inadequate, ineffective and excessively costly both to the states and to businesses, the Multistate Tax Compact (hereinafter the "Compact"), allegedly designed to achieve greater uniformity of state taxation of interstate business and to reduce double taxation, purportedly went into effect in its party states on August 4, 1967, after seven states had adopted it. (Art. X, § 1 of Compact, Appendix A to Defs.' Brief in Support of Motion.) At present, 21 states have adopted the Compact.[1]

The Compact established the defendant Multistate Tax Commission (hereinafter the "Commission") to administer its provisions. (Compact, Art. VI.) The Commission is composed of a member from each party state who generally is that state's chief administrator of the types of taxes to which the Compact applies;[2] each member, or Commissioner, is named as a defendant in the instant lawsuit. The Commission elects officers from among its members and appoints an Executive Director who is the Secretary and chief administrator of the Commission. At present, defendant Eugene Corrigan is Executive Director. The Commission has its headquarters in Boulder, Colorado, and is a citizen of the State of Colorado; it also maintains an office in Chicago and one in New York City.

Article VII of the Compact gives the Commission the power to adopt uniform regulations for the administration of tax laws which are uniform or similar in two or more party states and to prescribe uniform tax forms. The regulations adopted by the Commission are not binding upon the party states; each party state may individually consider such regulations for adoption in accordance with its own laws and procedures.

Before the Compact went into effect, the most serious problem in state corporate income tax law lay in the area of apportionment and allocation of the income of a multistate corporation to the states in which it is taxable. Article IV of the Compact seeks to alleviate this difficulty by allowing a multistate taxpayer to apportion and allocate its income under the apportionment formula and rules for specific allocation set forth in the Compact or by any other method available under state law. The Commission has adopted regulations dealing with the allocation and apportionment of income under Article IV. Plaintiffs state, however, that they believe only three party states (Oregon, Indiana and Alaska) had adopted any of these regulations as of December 31, 1972. (Pls.' Brief in Opp. at 13–14.)

Article III of the Compact provides that the party states will allow a "small taxpayer" (defined as one whose only activities within the taxing jurisdiction consist of sales and do not include owning or renting real estate or tangible personal property, and whose dollar volume of gross sales made during the tax year within the state or subdivision is not in excess of $100,000) to elect to pay a tax on its gross sales in lieu of the tax on net income. Not all party states have adopted the option and evidently several of those which have adopted it have not yet adopted a related tax rate.

---

1. These 21 states are: Alaska, Alas.Stat. § 43.10.010; Arkansas, Ark.Stat.1947, § 84-4101; Colorado, Colo.Rev.Stat.1963, Art. 74–14; Florida, Fla.Stat.Ann. § 213.15; Hawaii, Hawaii Rev.Stat. § 255–1; Idaho, Idaho Code, § 63–3701; Illinois, Ill.Rev.Stat. ch. 120, § 871; Indiana, Burns' Ind.Stat.Ann. § 64–4464; Kansas, Kan.Stat.Ann. § 79-4307; Michigan, Mich.Comp.Laws Ann. § 205.588; Missouri, Mo.Rev.Stat., 1969, § 32.-200; Montana, Mont.Rev.Code 1947, § 84-6701; Nebraska, Neb.Rev.Stat.1943, § 77-2901; Nevada, Nev.Rev.Stat. § 376.060; New Mexico, N.M.Stat.Ann.1953, § 72–15A-37, 44; North Dakota, N.D.Cent.Code, § 57–59–08; Oregon, Or.Rev.Stat. § 305.675; Texas, Tex.Civil Stat., Art. 7359a; Utah, Utah Code Ann.1953, § 59–22–1; Washington, Wash.Rev.Code Ann., § 82.56; Wyoming, Wyo.Stat.1957, § 39–376.

2. The Compact deals primarily with state net income taxation of interstate businesses, but Article V of the Compact also deals with sales and use taxes.

Article IX allows the Commission, at the option of the taxpayer, to arbitrate disputes concerning apportionment and allocation but only with respect to a claim of double or multiple (but not over-) taxation. The arbitration procedure requires the adoption by the Commission of a regulation for it to become effective. No such regulation is in effect.

The most significant power of the Commission (and the real bone of contention between the parties) is its authority under Article VIII of the Compact to conduct "interstate audits" of multistate corporations. Such audits may relate to any tax or license fee imposed in whole or in part for revenue purposes. In general, the Commission may conduct audits upon the request and on the behalf of one or more states party to the Compact or it may itself offer to conduct an audit based upon its determination that such audit would be "of interest" to a number of party states. The Commission has broad subpoena power and the authority to seek court enforcement in connection with the carrying out of its audit responsibilites. Article VIII is in force only in those party states which specifically have adopted it, 17 to date.[3]

Although several bills[4] have been introduced in Congress for the purpose of obtaining Congressional consent to the Compact, Congress has yet to act.

The impetus for the instant lawsuit was a demand by defendant Corrigan that plaintiffs submit to the audits provided for in Article VIII of the Compact. Plaintiffs challenge the constitutionality of the Compact on the grounds: (1) that the Compact, and, therefore, any audit demanded pursuant thereto, is invalid under the compact clause, Art. I, § 10, Cl. 3, U.S.Const., because Congress has not given its consent; (2) that the Compact encroaches upon the power of Congress to regulate commerce among the several states under the commerce clause, Art. I, § 8, U.S.Const., and imposes unreasonable burdens in interstate commerce; (3) that the Compact violates the due process and equal protection clauses of the fourteenth amendment; and (4) that the Compact violates the fourth amendment's proscription against unreasonable searches and seizures. Jurisdiction is alleged under 28 U.S.C. §§ 1331 (cases arising under the Constitution wherein the value in controversy exceeds $10,000), 1332 (diversity of citizenship), and 1343(3) (deprivation under color of state law of rights secured to plaintiffs under the Constitution). The action is brought as a class action, seeks declaratory and injunctive relief, and requests the convening of a three-judge court under 28 U.S.C. §§ 2281 and 2284.

## II. Subject Matter Jurisdiction

### A. Eleventh Amendment Immunity

▪ Defendants, in support of their motion to dismiss, argue, first, that this court has no jurisdiction over the Commission qua commission on the ground that, because the Commission is an agency of states which have not consented to be sued, the eleventh amendment to the United States Constitution bars this action. The Court disagrees.

The eleventh amendment provides:

"The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of an-

---

3. The 17 states are Alaska, Arkansas, Colorado, Florida, Hawaii, Idaho, Illinois, Indiana, Kansas, Michigan, Nebraska, Nevada, New Mexico, North Dakota, Oregon, Texas and Washington. Arkansas' adoption of Article VIII is contingent upon a recommendation from that state's Commissioner of Revenue that it be made effective, and further contingent upon approval of the Governor.

4. See S. 3892, 89th Cong., 2d Sess. (1966); S. 883, S. 1551, H.R. 9476 and H.R. 13682, 90th Cong., 1st Sess. (1967); S. 1198, H.R. 6246 and H.R. 9873, 91st Cong., 1st Sess. (1969); S. 1883 and H.R. 6160, 92d Cong., 1st Sess. (1971); S. 3333, 92d Cong., 2d Sess. (1972).

other State, or by Citizens or Subjects of any Foreign State."

To say that a state agency is entitled to eleventh amendment immunity presupposes the constitutional validity of that agency. Where, as here, it is charged that the agency itself is constitutionally invalid, the eleventh amendment is no bar.

> "The Constitution of the United States, with the several *amendments* thereof, must be regarded as one instrument, all of whose provisions are to be deemed of equal validity. It would, indeed, be most unfortunate, if the immunity of the individual States from suits by citizens of other states, provided for in the 11th Amendment, were to be interpreted as nullifying those other provisions which confer power on Congress to regulate commerce among the several States, *which forbid the states . . . without the consent of Congress, from . . . entering into any agreement or compact with other states . . .* which provisions existed before the adoption of the 11th Amendment, which still exist, and which would be nullified and made of no effect, if the judicial power of the United States could not be invoked to protect citizens affected by the passage of state laws disregarding these constitutional limitations." Prout v. Starr, 188 U.S. 537, 543, 23 S.Ct. 398, 400, 47 L.Ed. 584 (1903) (emphasis added).

Defendants' reliance on Port of New York Authority and Water Front Commission of New York Harbor cases, Wolkstein v. Port of New York Authority, 178 F.Supp. 209 (D.N.J.1959); Rao v. Port of New York Authority, 122 F. Supp. 595 (E.D.N.Y.1954), aff'd per curiam, 222 F.2d 362 (2d Cir. 1955); Moroney v. Waterfront Commission of New York Harbor, 52 Misc.2d 424, 276 N.Y.S.2d 362 (Sup.Ct.1966); Bush Terminal Co. v. City of New York, 152 Misc. 144, 273 N.Y.S. 331 (Sup.Ct.1934), aff'd, 256 App.Div. 978, 11 N.Y.S.2d 554 (1939), aff'd, 282 N.Y. 306, 26 N.E.2d 269 (1940), for the proposition that a commission established by multistate compact is entitled to eleventh amendment immunity is erroneous since in those cases, unlike the case *sub judice,* the compact establishing the authority or commission had been approved by Congress so that the compact's validity was not at issue.

■■ Even if there were no question of the constitutional validity of the Commission, the mere fact that an agency is a valid state agency would not automatically entitle it to eleventh amendment immunity as a matter of law. In each case, the facts must be closely scrutinized to determine whether the agency in question is, in effect, an arm or alter ego of the state so as to entitle it to immunity, State Highway Commission v. Utah Construction Co., 278 U.S. 194, 49 S.Ct. 104, 73 L.Ed. 262 (1929); whether immunity has been expressly or impliedly waived, Kennecott Copper Corp. v. Tax Comm'n, 327 U.S. 573, 579–580, 66 S.Ct. 745, 90 L.Ed. 862 (1946); and whether the state is the real party in interest, Smith v. Reeves, 178 U.S. 436, 20 S.Ct. 919, 44 L.Ed. 1140 (1900). No single factor is dispositive in determining whether state immunity attaches to any one of its agencies. Pennsylvania Turnpike Commission v. Welsh, 188 F.2d 447 (3d Cir. 1951).

■ With regard to the individual Commissioners as defendants, a suit against a state official is not considered a suit against the state in violation of the eleventh amendment where the actions of the official which are challenged (1) are beyond the authority granted him by a valid statute or (2) are performed pursuant to an unconstitutional statute. In both situations, relief can be granted without impleading the state because of the officer's lack of delegated power; the only difference between the first and second situations is that in the second "power has been conferred in form but the grant is lacking in substance because of its constitutional invalidity." Larson v. Domestic & Foreign Commerce Corp., 337 U.S. 682, 689–690, 69 S.Ct. 1457, 93 L.Ed. 1628 (1949). In

the leading case of Ex parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), the Supreme Court upheld a lower court's injunction against the Attorney General of Minnesota restraining him from enforcing a state statute reducing railroad rates and providing severe penalties for any railroad which failed to comply. Plaintiffs charged that the new rates were unjust, unreasonable and confiscatory and would deprive the railroad companies of their property without due process of law. Over the Attorney General's objection that the suit was in fact a suit against the state in violation of the eleventh amendment, the Supreme Court held:

> "The . . . use of the name of the state to enforce an unconstitutional act to the injury of the complainants is a proceeding without the authority of, and one which does not affect the state in its sovereign or governmental capacity. It is simply an illegal act upon the part of a state official . . . . If the act which the state attorney general seeks to enforce be a violation of the Federal Constitution, the officer in proceeding under such an enactment, comes into conflict with the superior authority of that Constitution, and he is in that case stripped of his official or representative character and is subjected in his person to the consequences of his individual conduct." *Id.* at 159–160, 28 S.Ct. at 454.

In the instant case the defendant Commissioners are charged with acting under a constitutionally invalid state statute, *i. e.*, the statutes of the respective states adopting the Compact. That would seem to place them squarely within the *Young* doctrine. Defendants make the unique argument, however, that because the Commissioners cannot act singly, but only as a group (*i. e.*, the Commission acts only by majority vote of the Commissioners) this fact somehow removes them from the *Young* ex-

ception to eleventh amendment immunity. No authorities support such a proposition and defendants' assertion is contrary to cases ranging from Reagan v. Farmers' Loan & Trust Co., 154 U.S. 362, 14 S.Ct. 1047, 38 L.Ed. 1014 (1894), where the individual railroad commissioners, as well as the railroad commission, were enjoined from enforcing illegal fixing of rates, through the modern civil rights cases such as Wilgus v. Peterson, 335 F.Supp. 1385, 1389 (D.Del. 1972). The cases cited by defendants in support of their argument—Ford Motor Co. v. Department of Treasury, 323 U.S. 459, 65 S.Ct. 347, 89 L.Ed. 389 (1945); Great Northern Life Insurance Co. v. Read, 322 U.S. 47, 64 S.Ct. 873, 88 L.Ed. 1121 (1944); O'Neill v. Early, 208 F.2d 286, 288 (4th Cir. 1953)—are distinguishable. None of their holdings depended upon the fact that several state officials were named as defendants collectively, but, rather, were clearly based on the proposition that a suit to recover state treasury funds is barred by the eleventh amendment where the state has not consented to be sued. In the instant suit, however, plaintiffs seek declaratory and injunctive relief against the individual Commissioners, not a money judgment from the state.[5] Likewise, Knight v. State of New York, 443 F.2d 415 (2d Cir. 1971), cited by defendants, is inapposite. In that case plaintiff originally had brought suit against the State of New York seeking the return of property appropriated by the state. The state moved to dismiss and plaintiff moved to add as a defendant the state official involved. The state's motion was granted, and defendant's was denied. The Court of Appeals affirmed on the ground that at the time of suit, title had vested in the state and plaintiff's suit therefore would require affirmative action by the state to return the property. In so holding, however, the court noted:

> "It is equally clear that, under the doctrine of Ex parte Young, . . .

5. *See* Rothstein v. Wyman, 467 F.2d 226, 238 (2d Cir. 1972), for a recent case enunciating this distinction.

a person in Knight's position could have sued for an injunction in the federal courts, in advance of the taking, to restrain the commissioner from effecting the appropriation . . . ." *Id.* at 419.

As long as the individual Commissioners remain as commissioners they must be deemed to acquiesce in any action taken by the Commission and thus would be the proper parties to enjoin if a constitutional violation is found to have occurred.

### B. Tax Injunction Act of 1937, 28 U.S.C. § 1341

■ Defendants contend that 28 U.S.C. § 1341 bars plaintiffs from maintaining this lawsuit in federal district court. That section provides:

> "The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State."

In determining whether to exercise jurisdiction in a particular case, the Court must carefully weigh two countervailing considerations set forth by the statute: (1) a long standing policy of non-interference by federal courts in state tax matters; and (2) fairness to plaintiffs, *i. e.*, whether plaintiffs have an effective state remedy. "The cases construing [§ 1341] show that the broad language of the statute has been limited by numerous exceptions . . . ." Builders & Developers Corp. v. Manassas Iron & Steel Co., 208 F.Supp. 485, 491 (D.Md. 1962). Under the terms of the statute itself, a federal court must decline jurisdiction only when plaintiffs have a "plain, speedy and efficient [remedy]" in the state courts. Although the state remedy need not be "the best remedy available", Bland v. McHann, 463 F.2d 21, 29 (5th Cir. 1972), cert. denied, 410 U.S. 966, 93 S.Ct. 1438, 35 L.Ed.2d 700 (1973), its existence will not bar federal relief where the state remedy is "unduly burdensome". Georgia R.R. & Banking Co. v. Redwine, 342 U.S. 299, 72 S.Ct. 321, 96 L.Ed. 335 (1952). The test is whether the state remedy is "adequate". Spector Motor Service, Inc. v. O'Connor, 340 U.S. 602, 605, 71 S.Ct. 508, 95 L.Ed. 573 (1951); Hillsborough v. Cromwell, 326 U.S. 620, 624, 66 S.Ct. 445, 90 L.Ed. 358 (1946).

■ Defendants suggest that there are four methods by which plaintiffs can raise their constitutional claims in state court, any one of which is sufficiently "plain, speedy and efficient" to deprive this court of jurisdiction: (1) a suit for declaratory and injunctive relief in the courts of each of the 17 states which have adopted Article VIII of the Compact; (2) administrative review pursuant to statutes of each of the Compact states of the tax assessment imposed by each state after audit, followed by judicial review of the proposed administrative action in the courts of each of the member states; (3) interposition of their constitutional claims as a defense to subpoena enforcement actions brought either by a Commissioner *qua* commissioner or as agent for a Compact state requesting an audit; or (4) a suit in the Colorado state courts for declaratory and injunctive relief.

■ The first two suggested courses of action, and probably the third, share a common problem—multiplicity of suits; plaintiffs would have to bring at least 17 suits to obtain the same relief that can be obtained in the federal courts via one lawsuit. The reference to "such state" in § 1341 clearly indicates that the statute contemplated that the taxing authority of only one state would be involved and cannot mean that a taxpayer must resort to the courts of 17 states to obtain relief. It is not persuasive to argue, as defendants have in their brief, that the resulting multiplicity of actions "is nothing more nor less than the normal costs and burdens of conducting a multistate enterprise." (Defs.' Reply Brief at 8.) The test is whether the state remedy is "plain, speedy and efficient". The necessity for such a multiplicity of actions cannot by

any stretch of the imagination be considered a viable alternative to federal suit, but rather, falls into that category of state remedies which are considered "unduly burdensome". Georgia R.R. & Banking Co. v. Redwine, *supra*, 342 U.S. 299, 72 S.Ct. 321, 96 L.Ed. 335.

This interpretation of the statute is supported by the case of Matthews v. Rodgers, 284 U.S. 521, 52 S.Ct. 217, 76 L.Ed. 447 (1932), cited by defendants. The Court in *Matthews* refused to grant plaintiff taxpayers an injunction against a state taxing authority where they had an adequate remedy under state law by paying the tax and suing for a refund. In particular, the Court held that the state remedy was adequate *precisely because* each taxpayer would only have to bring one suit to vindicate his rights as a taxpayer. The Court indicated, however, that federal equity jurisdiction would obtain if plaintiffs would have had to bring numerous suits to vindicate their rights:

> "In general, the jurisdiction of equity to avoid multiplicity of suits at law is restricted to cases where there would otherwise be some necessity for the maintenance of numerous suits between the same parties, involving the same issues of law and fact." *Id.* at 529–530, 52 S.Ct. at 221.

Cases decided after the passage of the present version of § 1341 have sustained federal jurisdiction where the alternative state remedy involved a multiplicity of suits. *See* Georgia R.R. & Banking Co. v. Redwine, *supra*, 342 U.S. 299, 72 S.Ct. 321, 96 L.Ed. 335; Louisville & Nashville R.R. v. Public Service Commission, 249 F.Supp. 894 (M.D. Tenn. 1966), aff'd, 389 F.2d 247 (7th Cir. 1968).

■ The first suggested course of action is also inadequate because it is doubtful whether plaintiffs could acquire *in personam* jurisdiction over the Commission and its Executive Director in Compact states where the Commission·

maintains no office and conducts no audits. With respect to state actions for declaratory judgments, some of the states in question have strict statutory provisions requiring joinder of interested parties before declaratory relief can be granted.[6] Moreover, most of the declaratory judgment statutes set forth in Appendix C to defendants' brief require that declaratory relief, if granted, terminate the controversy. In a situation where plaintiffs may not be able to obtain jurisdiction over the proper parties, the state declaratory judgment remedy can hardly be said to be adequate.

■ The second suggested course of action has another infirmity: because it is unavailable to plaintiffs until after the audits have been conducted, it might cause plaintiffs irreparable injury. Plaintiffs would be required to turn over their books and records to persons whose authority and qualifications they claim are invalid. In cases where irreparable injury would occur if no injunction were to be granted, federal courts will entertain suit. Denton v. City of Carrolton, 235 F.2d 481 (5th Cir. 1956); Adams County v. Northern Pacific Ry. Co., 115 F.2d 768 (9th Cir. 1940). Moreover, a perusal of the statutory provisions cited in Appendix E to defendants' brief indicates that the scope of review in administrative proceedings protesting a tax assessment is narrow indeed, *i. e.,* it is limited to a determination of the correct amount of tax due.

■ Defendants' suggestion that plaintiffs raise their constitutional claims by way of a defense to a subpoena enforcement action is likewise without merit. Not only does this procedure involve a potential multiplicity of lawsuits, since Article VIII of the Compact provides that the Commission must apply for an enforcement order to the courts of an Article VIII Compact state, but also, it has been settled since Ex parte Young, *supra*, 209 U.S. at 163, 28 S.Ct. 441, that one does not have to wait

---

6. *See e. g.,* Ark.Stat.Ann. § 34–2510, under which failure to join a party results in denial of declaratory relief.

to raise constitutional claims by defending an enforcement action:

"To await proceedings against the company in a state court grounded upon a disobedience of the act, and then, if necessary, obtain a review in this court by writ of error to the highest state court, would place the company in peril of large loss and its agents in great risk of fines and imprisonment if it should be finally determined that the act was valid." *Id.* at 165, 28 S.Ct. at 456; *see also* Georgia R. R. & Banking Co. v. Redwine, *supra,* 342 U.S. at 303 n. 11, 72 S.Ct. 321.

Finally, defendants assert that an examination of the statutes and rules of Colorado, where the Commission and its Executive Director maintain their offices, discloses that this suit is maintainable in the state courts of Colorado. Assuming, *arguendo,* that all defendants assert with regard to the availability of declaratory relief, class actions and long-arm jurisdiction in the state courts of Colorado is true, it is questionable whether the Colorado courts would be willing to declare the tax laws of numerous sister states unconstitutional, and if they were, whether those sister states would be bound by Colorado's decision. Where, as here, the adequacy of the state court remedy is uncertain, there is no "plain" state remedy and the federal court can exercise jurisdiction under § 1341. Spector Motor Service, Inc. v. O'Connor, *supra,* 340 U.S. 602, 71 S.Ct. 508, 95 L.Ed. 573; Hillsborough v. Cromwell, *supra,* 326 U.S. 620, 66 S.Ct. 445, 90 L.Ed. 358; United States v. Livingston, 179 F.Supp. 9 (D.S.C.1959), aff'd, 364 U.S. 281, 80 S.Ct. 1611, 4 L. Ed.2d 1719 (1960). Moreover, where the choice is between a federal court passing on the constitutionality of the tax laws of 21 states or the courts of Colorado passing on the constitutionality of the tax laws of 21 states, this Court does not believe that § 1341 requires a federal court to decline jurisdiction in favor of the Colorado courts. When the power of the federal court to enjoin state officials was first firmly established in Ex parte Young, *supra,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714, a storm of controversy arose as to the propriety of one judge enjoining state legislation; this controversy led to the enactment of the initial statute requiring three federal judges to hear actions challenging the constitutionality of state legislation and providing for expedited review by the Supreme Court. *See* Hart & Wechsler, The Federal Courts and the Federal System 967 (2d ed. 1973). If such protections of a court of special dignity and expedited review are deemed necessary in a situation where there is, by virtue of the supremacy clause, a relationship of superior to inferior sovereignty, far greater restraint is necessary when the relationship between sister states is involved. Even if there were no questions of comity and sovereign rights, there is the important procedural feature that violation of a federal injunctive order may be punished by the issuing court regardless of where the infringement takes place. On the other hand, an injunction issued by a Colorado court would not *ipso facto* have effect in another jurisdiction. Therefore, even if plaintiffs were able to obtain injunctive relief in the Colorado state court, they would have to bring a new action in each of the other states to enforce it. Multiple litigation is thus also a necessary concomitant of filing suit in the Colorado courts. In such circumstances plaintiffs' only effective remedy lies in the federal courts.

### III. In Personam Jurisdiction

The defendant Commission was served with process within the State of New York through service upon one Patrick Greene, a Commission tax auditor, at the Commission's New York City office. Additionally, all defendants were served outside the State of New York: the Commission in Colorado through defendant Corrigan, and the individual Commissioners in their home states.

Defendants argue that the service upon the Commission within the State

of New York by serving Greene with a copy of the summons and complaint at the Commission's New York office was ineffective to grant in personam jurisdiction over the Commission. They argue further that the out-of-state service did not give this court in personam jurisdiction on the grounds that the New York "long-arm" statute, N.Y.C.P. L.R. § 302 (McKinney's Consol.Laws, c. 308, 1972), has no application to this lawsuit (1) because § 302 does not apply to sister states, their agencies or public officers; and (2) because it is contrary to the policy of the New York courts to entertain suits involving the tax laws of sister states.

*A. Service upon the Commission within New York State*

The applicable provision of the Federal Rules of Civil Procedure (hereinafter the "Rules") is Rule 4(d)(6), which spells out whom to serve when serving a state, municipal corporation or "other governmental organization". Before delving into the particulars of Rule 4(d)(6), it is well to point out that there is no inconsistency, as plaintiffs seem to suggest, in holding that, because the constitutional validity of the Commission is a major issue in this lawsuit, the Commission is not immune from suit under the exception to eleventh amendment immunity carved out by Ex parte Young, *supra*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714, and in viewing the Commission as a government agency in order to determine which statutes apply for the purposes of service of process. The varying federal and state rules for service of process on different types of entities, *e. g.*, corporations, governmental agencies or commissions, are keyed to the differing internal structures of those entities. They are set forth in order to assure proper notice of a lawsuit. The overall validity of the entity itself is a separate issue.

Rule 4(d)(6) provides that personal service shall be effected:

"Upon a state or municipal corporation or other governmental organiza-

tion thereof subject to suit, by delivering a copy of the summons and of the complaint to the *chief executive officer* thereof *or* by serving the summons and complaint in the manner prescribed *by the law of that state* for the service of summons or other like process upon any such defendant." (Emphasis added.)

Clearly, Greene is not the Commission's "chief executive officer"; that person is the Commission's Executive Director, defendant Corrigan. Therefore, we must look to the second half of the Rule 4(d)(6) to determine whether service on Greene satisfied the law of "that state".

Defendants contend that the words "that state" refer to the state of which the Commission is an agency; since it is an agency of 21 states, they argue, plaintiffs must comply with the laws for service of process of all 21 member states. It is inconceivable to this Court that Rule 4(d)(6) would require plaintiffs to go through such an exercise as to comply with the laws of 21 states. It seems far more reasonable, given the unique nature of the defendant Commission, to interpret "that state" to mean the state where the Commission is physically located and of which it is a citizen: namely, Colorado.

Turning, then, to the applicable Colorado statute, Rule 4 of Colorado's Rules of Civil Procedure provides, in pertinent part:

"(e) Personal Service in State. Personal service within the state shall be as follows:

. . . . . .

(9) Upon a department or agency of the state, subject to suit, by delivering a copy thereof to the principal officer, chief clerk, or other executive employee thereof." Colo.Rev.Stat. Rule 4 (1970 Rev.).

Plaintiffs contend that Greene qualifies under Colorado law as the "principal officer, chief clerk, or other executive employee" of the Commission's New York office. The Commission asserts that

Greene is in no wise in charge of the Commission's New York activities and has no executive responsibilities. Given this dispute, this Court cannot say, without further inquiry into the facts, whether service upon Greene in New York was sufficient for this Court to acquire in personam jurisdiction over the Commission. Because, however, this Court holds that service upon defendants outside the State of New York was effective, a resolution of this factual issue is unnecessary.

*B. Service Upon Defendants Outside the State of New York*

Whether the process of this court may extend beyond the territorial limits of the State of New York is a function of the interrelationship of Rule 4 of the Federal Rules of Civil Procedure and N. N.Y. C.P.L.R. §§ 302, 312 and 313 (Mc-Kinney 1972). Rule 4(f) provides in pertinent part:

> "All process other than a subpoena may be served anywhere within the territorial limits of the state in which the district court is held, and, when authorized by a statute of the United States or by these rules, beyond the territorial limits of that state."

Since no federal statute authorizes extraterritorial service in the case at bar, the validity of service outside the state upon each of the defendants depends upon "these rules". The relevant provision is Rule 4(e) which provides, in pertinent part:

> "Whenever a statute or rule of court of the state in which the district court is held provides (1) for the service of a summons . . . upon a party not an inhabitant of or found within the state, . . . service may . . . be made under the circumstances and in the manner prescribed in the statute or rule."

The "statute . . . of court of the state in which the district court is held" which provides "for the service of a summons . . . upon a party not an inhabitant of or found within the state"

is N.Y.C.P.L.R. § 313, which provides, in relevant part:

> "A person . . . subject to the jurisdiction of the courts of the state under Section 301 or 302 . . . may be served with the summons without the state, in the same manner as service is made within the state . . . .."

New York's long-arm statute, N.Y.C.P. L.R. § 302, sets forth the circumstances in which a New York court can exercise personal jurisdiction over a nondomiciliary:

> "(a) *Acts which are the basis of jurisdiction.* As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nondomiciliary . . . who in person or through an agent:
>
> 1. transacts any business within the state . . . .."

Defendants contend that this provision of New York's long-arm statute was intended to deal with causes of action growing out of the conduct of "businesses" and that it has no application to actions against other states or their officials in the administration of their tax laws. They base their argument (1) upon an incorrect interpretation of N.Y. C.P.L.R. §§ 311 and 312 (McKinney 1972) and (2) upon a body of case law which holds that one state will not enforce the revenue measures of another.

More particularly, defendants argue that §§ 311 and 312, which prescribe the mode of service on, *inter alia*, governmental organizations, do not specifically state that the mode of service set forth therein is to be applied to governmental organizations where jurisdiction is obtained through § 302, as does § 313. This argument places the proverbial cart before the horse. Section 313 is not a parallel of §§ 311 and 312. Whereas §§ 311 and 312 provide the *mode of service* for entities such as three-judge courts, corporations, and governmental subdivisions, § 313 indicates *when* service of process outside the State of New York

will give the courts personal jurisdiction over a defendant. Therefore, §§ 311 and 312 are analogous to N.Y. C.P.L.R. §§ 307, 308, 309 and 310 (McKinney 1972), which set forth the proper mode of service upon the state, a natural person, an infant or incompetent, and a partnership, respectively. The parallel of § 313 is N.Y. C.P.L.R. § 314 (McKinney 1972), which sets forth when service of process outside the state will *not* give the courts personal jurisdiction over a defendant. Defendants' argument, carried to its logical conclusion, would mean that the long-arm statute would not apply to corporations either (for the mode of service upon corporations is also described in § 311), which of course it does. Potter's Photographic Applications Co. v. Ealing Corp., 292 F. Supp. 92 (E.D.N.Y.1968).

The two cases cited by defendants in support of their argument that § 302 does not apply to the governments of sister states—Sutton v. City of Philadelphia, 286 F.Supp. 143 (S.D.N.Y.1968) and Lawrence v. Blackwell, 298 F.Supp. 708 (N.D.Ga.1969)—are easily distinguishable from the case at bar. Those cases involved the setting aside of service of process upon defendants who were neither personally within the state nor had agents within the state. In *Sutton* there was no showing of any activities whatsoever by defendants within the forum district; in *Lawrence* there were only isolated cases of mailings to the district by defendants. Both *Sutton* and *Lawrence* are distinguishable from the instant case because defendants maintain an office and conduct audits in the forum state. On the facts presented here, these cases are not in point and cannot be interpreted to establish the broad rule of governmental immunity defendants suggest.

■ Defendants also argue that the long-arm statute is inapplicable to the instant case by relying upon cases which hold that one state will not enforce the revenue laws of another. The instant case, however, is not one to "enforce revenue measures" or "collect taxes".

Plaintiffs are resisting what they claim are unconstitutional actions by the tax collector. Even if it were against New York State policy to entertain this type of suit (a proposition for which defendants cite no relevant authority, certainly not City of Philadelphia v. Cohen, 11 N.Y.2d 401, 230 N.Y.S.2d 188, 184 N.E.2d 167 (1962)), a federal court would not be forbidden from utilizing the state long-arm statute to obtain personal jurisdiction in a case where federal subject matter jurisdiction clearly obtains. Although defendants do launch an attack on subject matter jurisdiction, as discussed *supra*, they do not question the diversity or federal question basis of this court's jurisdiction.

Accordingly, applying the aforementioned statutes to the facts of the instant case, our inquiry must be whether the defendants have sufficient contacts within the State of New York to serve as a basis for jurisdiction in that state under § 302 (§ 302 rather than § 301 since the cause of action arose out of the New York activity, *i. e.*, the audits) so as to enable this court to exercise personal jurisdiction over the defendants through service of process outside the state of New York, as allowed by § 313 and Rule 4(e).

*1. Jurisdiction Over the Commission*

It is undisputed that the Commission (1) maintains an office in New York; (2) conducts audits on multistate corporations located in the area from that office; (3) employs three auditors in New York who work out of the New York office; and (4) is listed in the Manhattan Telephone Directory.

■ The fact that the activity engaged in by defendants within New York, *i. e.*, conducting audits, is not a typical commercial enterprise, does not remove it from the ambit of the "transacts any business" test of § 302. The term "transacts any business" has been held to include: the execution of a separation agreement, Kochenthal v. Kochenthal, 28 A.D.2d 117, 282 N.Y.S.2d 36 (1967); the making of a retainer for le-

gal services, Elman v. Belson, 32 A.D.2d 422, 302 N.Y.S.2d 961 (1969); the entry into New York by nondomiciliary defendants to attend one meeting concerning shares held in street name by a New York broker, Parker v. Rogerson, 33 A.D.2d 284, 307 N.Y.S.2d 986, appeal dismissed, 26 N.Y.2d 964, 311 N.Y.S.2d 7, 259 N.E.2d 479 (1970); and the entry into New York by a nondomiciliary to receive medical treatment, Cohen v. Haberkorn, 30 A.D.2d 530, 291 N.Y.S.2d 119 (1968). The test is whether the defendant has engaged in "some purposeful activity in this State in connection with the matter is suit." Longines-Wittnauer Watch Co. v. Barnes & Reinecke, 15 N.Y.2d 443, 457, 261 N.Y.S.2d 8, 18, 209 N.E.2d 68, 76 (1965). Clearly, the Commission's conducting of audits is "purposeful activity" in the State of New York within the meaning of the "transacts any business" test of § 302.

Once a basis for jurisdiction has been established under § 302, § 313 directs that service of process may be made "without the state, in the same manner as service is made within the state." The applicable New York statute is N.Y. C.P.L.R. § 312, which provides, in pertinent part:

" . . . Personal service upon a board or commission having a chairman or other presiding officer, secretary or clerk, by whatever official title he is called, may be made by delivering the summons to him . . ."

In the instant case the service of a copy of the summons and complaint upon defendant Corrigan, as the Commission's Executive Director in Colorado, was sufficient to confer personal jurisdiction over the Commission in this court.

*2. Jurisdiction Over the Individual Defendants*

 The individual defendants are charged with violations of the Civil Rights Act, and in this regard, relief is sought against them individually. *See* United States ex rel. Wood v. Blacker, 335 F.Supp. 43 (D.N.J.1971). Service of process outside the State of New York is permissible to confer in personam jurisdiction over them in this court if a basis for the exercise of jurisdiction exists under § 302. In determining whether these defendants have engaged in "purposeful activity" in this state in connection with the matter in suit, services performed by their agents may be attributed to the defendants for jurisdictional purposes. Collateral Factors Corp. v. Meyers, 39 A.D.2d 27, 29–30, 330 N.Y.S.2d 833, 835 (1972). Therefore, the acts of Greene and the other auditors in New York must be attributed to the individual Commissioners and such acts therefore serve as the basis of jurisdiction over them as well as over the Commission itself. Accordingly, service upon the individual defendants in their home states was proper.

*IV. Failure to State a Claim*

 Defendants move pursuant to Rule 12(b).(6) to dismiss for failure to state a claim upon which relief can be granted. This motion is frivolous. The well-settled rule is that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief. K. S. Corp. v. Chemstrand Corp., 198 F.Supp. 310 (S.D.N.Y.1961). Both sides have submitted lengthy and erudite briefs discussing the merits of the claims raised in the complaint. The fact that the parties found it necessary to so extensively brief the sufficiency of the claims tells this Court that a decision must await a determination on the merits.

Accordingly, defendants' motions to dismiss the action on the grounds that this court lacks jurisdiction over the subject matter and persons of the defendants, and for failure to state a claim upon which relief can be granted are denied in all respects.

So ordered.