**CITICORP INTERNATIONAL TRADING COMPANY, INC., Plaintiff,**

v.

**WESTERN OIL & REFINING COMPANY, INC., Robert A. Zander and Karin Zander, Defendants.**

**No. 88 Civ. 5377 (RWS).**

United States District Court, S.D. New York.

March 16, 1989.

Milgrim, Thomajan & Lee, P.C., New York City, for plaintiff; David P. Langlois, of counsel.

Victor A. Garnice, Scottsdale, Ariz., for defendants.

## OPINION

SWEET, District Judge.

Defendants Robert A. Zander ("Robert"), Karin Zander ("Karin") (together, the "Zanders"), and Western Oil & Refining Co., Inc. ("Western") have moved pursuant to Rules 12(b)(2) and 12(b)(5), Fed.R.Civ.P., to dismiss the complaint of plaintiff Citicorp International Trading Company ("CITC") for lack of personal jurisdiction and for failure of service of process. In the alternative, defendants move pursuant to 28 U.S.C. § 1404 for a change of venue to the United States Court for the District of Arizona. The motions were argued on October 21, 1988 and were considered fully submitted on December 8, 1988. For the reasons set forth below, defendants' motions are denied.

*Facts*

CITC is a Delaware corporation with its principal place of business in New York. Western is a California corporation with its principal place of business in Arizona. The Zanders, officers of Western and its sole owners, are residents of Arizona.

In June, 1986, Robert, acting through a banker, contacted CITC in New York to assist him in connection with Western's proposed crude oil purchase contracts with Nigerian National Petroleum Corporation ("NNPC"), the Nigerian government-owned oil agency. Robert communicated with CITC in New York often over the next several months by telephone, telex and facsimile transmission. In addition, he made several visits to New York to negotiate proposed business transactions. Robert, on behalf of Western, and CITC discussed various transactions. Further, CITC claims that Robert and Karin came to New

York and had dinner with CITC officials; Karin, however, has submitted an affidavit stating that she has never been to New York.

To convince CITC to assist the Zanders and Western in connection with their business with NNPC, Robert, on behalf of himself and his wife, promised to stand behind all of Western's financial obligations to CITC and provided CITC with the Zanders' personal financial statement to demonstrate their ability to back their commitments. The statements show assets of $55,452,600 and a net worth of $32,519,400.

On January 13, 1987, Western and CITC executed a Representative Agency Trade Agreement (the "Agency Agreement"). The Agency Agreement was signed at CITC's offices in New York. In addition, CITC loaned Western $1,000,000 required by NNPC as a good faith performance deposit in contemplation of cargos of crude oil to be loaded in Nigeria. This was done by way of a promissory note in the amount of $1,000,000 executed on February 20, 1987 between Western and CITC, and an unconditional guarantee on the promissory Note signed by Robert. Before the $1,000,000 bank check was issued, Robert was in New York several times to arrange the loan. Upon issuance of the check, Robert sent a representative to New York to pick up the check and deliver it to Nigeria.

Under the Agency Agreement, CITC was entitled to be reimbursed for all direct expenses incurred by CITC on behalf of Western. To facilitate Western's sale of crude oil, CITC chartered two vessels for Western. When the vessels were not loaded in Nigeria, CITC was forced to pay ship demurrage charges as well as cancellation charges totalling in excess of $1,437,000, as well as interest expenses, miscellaneous expenses and other commissions, all of which were incurred in new York. To reflect this commitment under the Agency Agreement, on August 21, 1987, Robert and Karin Zander and Western signed a promissory note in Arizona (the "Note"), payable to CITC in New York for the sum of $1,572,429. The Note was signed by Robert in his capacity as President of Western and by Robert and

Karin in their individual capacities as guarantors, and provides for joint and several liability between and among Western, Karin and Robert. The action in this case is brought under this Note.

*N.Y. CPLR § 302(a)(1)*

■ It is well-established that personal jurisdiction in a diversity action must be determined by the law of the forum. *Arrowsmith v. United Press International*, 320 F.2d 219, 233 (2d Cir.1963) (en banc). New York CPLR § 302(a)(1) provides:

a may exercise personal jurisdiction over any non-domiciliary ... who ...:

1. transacts any business within the state or contracts anywhere to supply goods or services in the state.

According to the Court of Appeals for the Second Circuit,

A nondomiciliary "transacts business under CPLR 302(a)(1) when he purposefully avails [himself] of the privilege of conducting activities within [New York], thus invoking the benefits and protections of its laws.

*CutCo Industries, Inc. v. Naughton*, 806 F.2d 361, 365 (2d Cir.1986), *quoting McKee Electric Co. v. Rauland–Borg Corp.*, 20 N.Y.2d 377, 382, 283 N.Y.S.2d 34, 229 N.E. 2d 604 (1967). Further, an examination of "[t]he totality of defendant's activities within the forum" will show whether a defendant has availed himself or herself of the privilege of conducting activity within New York. *Longines–Wittnauer Watch Co. v. Barnes & Reinecke, Inc.*, 15 N.Y.2d 443, 447 & n. 5, 261 N.Y.S.2d 8, 18, 209 N.E.2d 68, 75, *cert. denied*, 382 U.S. 905, 86 S.Ct. 241, 15 L.Ed.2d 158 (1965). *See also Collateral Factors Corp. v. Meyers*, 39 A.D.2d 27, 29, 330 N.Y.S.2d 833 (1st Dep't 1972) ("In determining whether the defendants are subject to jurisdiction under the long-arm statute.... the entire transaction must be considered.").

■ Robert, on behalf of Western, initiated the transaction with New York-based CITC. He and other Western personnel made several visits to New York to foster the CITC–Western relationship. Negotiations were held in New York, and several agreements—including the Agency Agree-

ment, but not including the Note at issue in this case—were signed in New York. The Note specifically designates New York as the place of payment.[1] Moreover, agreements signed by the parties, including the Agency Agreement and the Note, provide that the laws of New York will govern the Agreements. Such choice of law provisions are a factor to consider when making jurisdictional determinations. *See Burger King v. Rudzewicz,* 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985); *CutCo Industries,* 806 F.2d at 367 ("[w]e believe that New York would ... consider choice of law clauses to be relevant in determining whether a non-domiciliary 'transacted business' for CPLR 302(a)(1) purposes."). This combination of contacts indicates that Western and Robert have purposefully availed themselves of the benefit of conducting activities in New York, and thus were transacting business in New York within the meaning of § 302(a)(1).

As for personal jurisdiction over Karin, under § 302(a)(1), the activities of a nonresident defendant's agent in New York provide a basis for jurisdiction over a nonresident on suits arising out of the agent's activities in New York. Therefore, if Robert was Karin's agent, and if this suit arises out of his activities in New York, which, as seen, it does, this court has jurisdiction over Karin.

As the Court of Appeals for the Second Circuit has stated, "where there is joint control of a business enterprise ... enough control has been shown to establish *prima facie* this particular element of agency to satisfy long-arm jurisdiction." *CutCo Industries, Inc.,* 806 F.2d at 366. Because Robert and Karin were the sole owners of Western, Robert was Karin's agent for purposes of § 302(a).

In addition, as long as Karin's agent Robert was within New York State for her benefit and with her consent, there is jurisdiction under § 302(a)(1). *See Plaza Realty Investors v. Bailey,* 484 F.Supp. 335, 347

n. 10 (S.D.N.Y.1979) (an individual will be deemed an agent of a nonresident defendant if that individual appeared in new York "for the benefit of and with the knowledge and consent of the defendant") (citations omitted); *Parke–Bernet Galleries, Inc. v. Franklyn,* 26 N.Y.2d 13, 308 N.Y.S.2d 337, 256 N.E.2d 506 (1970). Robert was in New York on several occasions for the benefit of and with the knowledge and consent of Karin. He negotiated deals in which both he and Karin offered their individual guarantees. Indeed, the fact that Karin signed the Note shows that she ratified his acts. Thus Robert acted as Karin's agent, and this court has jurisdiction over Karin pursuant to CPLR § 302(a)(1).

### Service of Process

Because all three defendants are subject to personal jurisdiction pursuant to § 302, service of process effected in Arizona was proper under CPLR § 313.

### Venue

Title 28 U.S.C. § 1404 permits a change of venue "for the convenience of parties and witnesses, in the interest of justice." The burden of establishing that there should be a change of forum under § 1404 is on the defendant-movant. *Factors, Etc., Inc. v. Pro Arts, Inc.,* 579 F.2d 215, 218 (2d Cir.1978), *cert. denied,* 440 U.S. 908, 99 S.Ct. 1215, 59 L.Ed.2d 455 (1979); *Troyer v. Karcagi,* 488 F.Supp. 1200 (S.D.N.Y.1980). It is well-established that this burden is heavy, for a plaintiff's choice of forum is accorded considerable weight, and "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947). Thus, " '[a]bsent a clear and convincing showing' that the balance of convenience strongly favors the alternate forum, discretionary transfers are not favored. Where the balance of convenience is in equipoise, plaintiff's choice of forum

---

1. Although payment in New York is not enough, on its own, to confer personal jurisdiction, *see Plaza Realty Investors v. Bailey,* 484 F.Supp. 335, 345–46 (S.D.N.Y.1979) (citations omitted), it is one factor to be considered in deciding whether personal jurisdiction over the payor should be exercised. *Plaza Realty,* 484 F.Supp. at 345.

should not be disturbed." *Ayers v. Arabian American Oil Co.,* 571 F.Supp. 707, 709 (S.D.N.Y.1983) (citations omitted).

Among the factors to balance in determining venue are:

(1) the convenience to parties; (2) the convenience of witnesses; (3) the relative ease of access to sources of proof; (4) the availability of process to compel attendance of unwilling witnesses; (6) the practical problems indicating where the case can be tried more expeditiously and inexpensively; and (7) the interests of justice.

*Schneider v. Sears,* 265 F.Supp. 257, 263 (S.D.N.Y.1967) (footnotes omitted).

The Zanders and Western have failed to meet their burden of establishing the need to change of venue. In favor of retaining venue in New York is the fact that all of the proof as to the Note as well as the underlying indebtedness rest in CITC's possession, namely the Note, the vessel charters, the incidental expenses and details of the parties' relationship. Further, CITC and its witnesses are here. Defendants have obtained New York counsel and have already demonstrated a willingness and ability to travel to New York. In addition, the Agency Agreement was negotiated and signed here, the laws of New York were chosen to apply to the controversy, and payment under the Note was required here.

On the other hand, defendants have not pointed to any witnesses, testimony or other factor, apart from their own inconvenience, that would make New York overwhelmingly inconvenient as a forum. Nor have they established that Western would suffer irreparable damage due to the existence of the lawsuit here. Similarly, the Zanders have not established that coming to New York would be a serious financial hardship.

Based on this examination, it appears that the measure of convenience to parties, witnesses, and sources of proof weigh more heavily in favor of staying in New York. Therefore, CITC's choice of forum will be respected. This choice is further supported by the fact that under the terms of the Note, New York law will govern this dispute, and presumably, courts in New York are more familiar with New York substantive law than are courts in Arizona. *See Troyer v. Karcagi,* 488 F.Supp. at 1207. Thus, based on the findings and conclusions set forth above, defendants' motion for a change of venue is denied.

*Conclusion*

For the reasons set forth above, defendants' motions to dismiss the complaint for lack of personal jurisdiction and to change venue are denied.

It is so ordered.