■ In the Matter of UNION CARBIDE CHEMICALS & PLASTIC COMPANY, INC., Petitioner, v TAX APPEALS TRIBUNAL OF THE STATE OF NEW YORK et al., Respondents. [623 NYS2d 393] —Peters, J. Proceeding pursuant to CPLR article 78 (initiated in this Court pursuant to Tax Law § 2016) to review a determination of respondent Tax Appeals Tribunal which sustained a real property transfer gains tax assessment imposed under Tax Law article 31-B.

Pursuant to a contract of sale entered into on December 31, 1985, petitioner agreed to sell to Keren Limited Partnership certain real property in Westchester County for $170,000,000. The purchase price was paid by two promissory notes, each secured by a purchase-money mortgage: the first for $102,000,000, due and payable on December 31, 1986 with interest at the rate of 11.25%; the second for $70,000,000, due and payable on December 31, 1988, with no provision for interest.* Prior to the closing, the Department of Taxation and Finance issued a "tentative assessment and return" for the real property transfer gains tax which showed an increase over peti-

---

* If the loan was not repaid by the due date, interest would then be payable at the rate of one-half per cent over the then-prevailing rate under the first note, but in no event less than 10%.

tioner's computations. The Department, *inter alia,* rejected petitioner's computations which were reached as a result of its discount of the noninterest-bearing note to reflect present value. Petitioner elected to pay the tax due in installments but filed a claim for a refund. The assessment was upheld by an Administrative Law Judge and by respondent Tax Appeals Tribunal. Petitioner thereafter commenced this proceeding to annul the Tribunal's determination.

Pursuant to Tax Law article 31-B, a gains tax is imposed upon a transfer of real property within the State at the rate of 10% on the gain derived from such transfer (Tax Law § 1441). As defined by Tax Law article 31-B, gain is "the difference between the consideration for the transfer of real property and the original purchase price of such property, where the consideration exceeds the original purchase price" (Tax Law § 1440 [3]). Consideration is defined, in pertinent part, as follows: "[A]ny price paid or required to be paid, whether expressed in a deed and whether paid or required to be paid by money, property, or any other thing of value and including the amount of any mortgage, purchase money mortgage, lien or other encumbrance, whether the underlying indebtedness is assumed or taken subject to" (Tax Law § 1440 [1] [a]). The regulations promulgated in connection with this statute clarify that, when computing consideration received in connection with the transfer of real property, "the face amount of the mortgage taken back by the transferor" will be deemed the consideration received (20 NYCRR 590.12).

The Tribunal has ruled consistently therewith *(see, Matter of River Terrace Assocs.,* Tax Appeals Tribunal [Oct. 22, 1992], 1992 WL 321221; *Matter of Normandy Assocs.,* Tax Appeals Tribunal [Mar. 23, 1989], 1989 WL 127220; *see also, Matter of Evelyn Reynolds,* Division of Tax Appeals [Mar. 17, 1994], 1994 WL 100081; *Matter of Jane Mansions,* Division of Tax Appeals [Feb. 24, 1994], 1994 WL 68905). In so doing, the Tribunal noted the plain import of the language used by the Legislature when enacting Tax Law article 31-B and concluded that the use of the term "amount" when defining a mortgage as consideration *(see,* Tax Law § 1440 [1] [a]) differs from the use of the term "value" when defining lease payments as consideration *(see,* Tax Law § 1440 [1] [b]; *Matter of River Terrace Assocs., supra; Matter of Normandy Assocs., supra)* and, therefore, the Legislature intended that the face amount of mortgages be used when determining consideration for purposes of the gains tax.

The legislative history of Tax Law article 31-B further

supports this reasoning. Noting that Tax Law article 31-A, enacted in 1981 (L 1981, ch 487, § 1) and repealed in 1982 (L 1982, ch 57, § 1, eff Feb. 1, 1982, retroactive to July 11, 1981), served as a model for the current Tax Law article 31-B and that Tax Law article 31-A initially provided that the "value" of a mortgage would be used when determining consideration for purposes of the gains tax (see, L 1981, ch 487, § 1), the Legislature, when enacting the current Tax Law article 31-B, substituted such language with the requirement that the face "amount" of such mortgage taken back by the transferor be used when defining consideration under the gains tax (see, Tax Law § 1440 [1] [a]). Accordingly, in finding the Tribunal's interpretation neither erroneous, arbitrary nor capricious, the determination must be confirmed (see, Matter of 1230 Park Assocs. v Commissioner of Taxation & Fin. of State of N. Y., 170 AD2d 842, lv denied 78 NY2d 859; Matter of F & W Oldsmobile v Tax Commn., 106 AD2d 792).

Addressing next petitioner's constitutional argument that such interpretation of the gains tax is violative of its equal protection rights under both the Federal and State Constitutions, we note that the statute under review must be upheld if the challenged "classification is rationally related to achievement of a legitimate state purpose" (Western & S. Life Ins. Co. v Board of Equalization, 451 US 648, 657). Neither the Federal nor State Constitution requires that all taxpayers be treated identically, only that those similarly situated be treated uniformly (see, Foss v City of Rochester, 65 NY2d 247, 256). Recognizing that the current statute has a presumption of constitutionality, the burden remained on petitioner to show that the difference in treatment is " 'palpably arbitrary' or amounts to an 'invidious discrimination' " (Trump v Chu, 65 NY2d 20, 25, appeal dismissed 474 US 915). We find that petitioner has not overcome this burden (see, Executive Land Corp. v Chu, 150 AD2d 7, appeal dismissed 75 NY2d 946; Matter of Cove Hollow Farm v State of New York Tax Commn., 146 AD2d 49). In distinguishing the mortgage at issue from an unsecured note, the Tribunal appropriately reasoned that an unsecured creditor is in a distinctly different position than a transferor who receives a note secured by a mortgage since the secured creditor has a lien upon the real property for the payment of debt (see, Matter of Old Farm Lake Co., Tax Appeals Tribunal [Apr. 2, 1992], 1992 WL 80583).

We further find no merit to petitioner's contention that the gains tax was intended to apply only to net economic gain

pursuant to the principles of *Trump v Chu (supra)*. As the current application does not render the gains tax a gross receipts tax or a tax imposed without regard to profits *(see, supra)*, we conclude that petitioner has failed to overcome its heavy burden to "negate every conceivable basis which might support [the classification]" *(Matter of Cove Hollow Farm v State of New York Tax Commn., supra,* at 53; *see, Trump v Chu, supra,* at 25).

As to the remaining contentions raised by petitioner, we find them to be without merit. We accordingly confirm the determination of the Tribunal.

Mikoll, J. P., Mercure, Crew III and Yesawich Jr., JJ., concur. Adjudged that the determination is confirmed, without costs, and petition dismissed.