[679 NYS2d 192]

In the Matter of NEW YORK STATE CLINICAL LABORATORY AS-
SOCIATION, INC., Appellant, v BARBARA DEBUONO, as Com-
missioner of the New York State Department of Health, et
al., Respondents.

Third Department, October 29, 1998

## APPEARANCES OF COUNSEL

*Harter, Secrest & Emery,* Rochester (*Thomas G. Smith* of counsel), for appellant.

*Dennis C. Vacco, Attorney-General,* Albany (*Gina M. Ciccone* of counsel), for respondents.

*Hinman, Straub, Pigors & Manning,* Albany (*Eileen M. Considine* of counsel), for New York State Conference of Blue Cross and Blue Shield Plans, *amicus curiae.*

## OPINION OF THE COURT

PETERS, J.

Appeal from a judgment of the Supreme Court (Cobb, J.), entered May 29, 1997 in Albany County, which, *inter alia,* dismissed petitioner's application, in a combined proceeding pursuant to CPLR article 78 and action for declaratory judgment, challenging certain provisions of the Health Care Reform Act of 1996.

Petitioner, a trade association of free-standing clinical laboratory organizations,[1] commenced this proceeding to challenge the constitutionality of the Health Care Reform Act of 1996 (Public Health Law § 2807-j, as added by L 1996, ch 639, § 51 [hereinafter HCRA]), contending that it violated the equal protection of laws under the State and Federal Constitutions, that the interpretation thereof by the Department of Health (hereinafter DOH) was arbitrary and capricious, and that the obligations imposed amounted to a taking of property without

---

1. These free-standing clinical laboratories provide clinical laboratory services at the request of physicians and other health care providers.

due process of law. After joinder of issue[2] and discovery, Supreme Court dismissed the petition in its entirety, thus prompting this appeal. Upon our review of its legislative underpinnings, we are constrained to affirm.

The enactment of the HCRA was a further attempt by the Legislature to address, *inter alia*, the long-standing societal problem of financing uncompensated care associated with the medically indigent and to offset bad debt to insure the financial stability of hospitals. Recognizing that the predecessor to HCRA, the New York State Prospective Hospital Reimbursement Methodology (hereinafter NYSPHRM), no longer met the goals of today's health care systems since an increasing proportion of health care services were now provided outside of a hospital setting, HCRA essentially deregulated the health care financing system and established a free market-based system.

Under the HCRA statutory scheme, DOH would cease to comprehensively regulate hospital rates and charges, leaving hospitals free to negotiate their own rates and charges with most nongovernmental payors. Whereas surcharges were previously imposed upon hospital in-patient payments through NYSPHRM as a means to fund public good programs such as the bad debt and charity care costs (hereinafter BDCC costs), the deregulation of the health care financing system threatened the continued viability of such programs. Recognizing that public policy mandated the continued funding of such programs and concluding that out-patient surgery and managed care significantly reduced in-patient hospital admissions, HCRA, through a newly enacted Public Health Law § 2807-j, expanded its base for BDCC financing to include hospital out-patient departments, certain kinds of diagnostic and treatment centers, ambulatory surgical centers and clinical laboratories. Thus, a pool of funds was created for BDCC costs and other public benefit costs including health insurance for indigent children and a prospective grant program for clinical laboratories.

To create this pool under HCRA, the above-referenced designated providers of health care services are required to insure that payments made to them or on their behalf for patient care services include a percentage surcharge which

---

2. New York State Conference of Blue Cross and Blue Shield Plans (hereinafter Blue Cross) unsuccessfully moved to intervene, claiming that it had a direct interest in the outcome of this dispute. While a notice of appeal was thereafter filed, it was later withdrawn since it sought and received permission to file an *amicus curiae* brief herein.

varies between 8.18% and 32.18%[3] depending upon whether a third-party payor elects to pay all such surcharges directly into the DOH BDCC pool. It is the imposition of this surcharge upon petitioner's members, with exemptions provided for private physicians' laboratories and other out-patient medical services such as X rays, pharmacies and private physicians' offices, coupled with challenges to the method of collection as interpreted by DOH, that prompted this appeal.

█ In reviewing whether the HCRA violates the rights of petitioner's members to equal protection of the laws because they are subject to the surcharge provisions while others remain exempt, we must acknowledge that "[t]he Federal and State Constitutions do not * * * require that all taxpayers be treated the same. They require only that those similarly situated be treated uniformly. Thus, the creation of different classes * * * is permissible as long as the classification is reasonable and the taxes imposed are uniform within the class" (*Foss v City of Rochester*, 65 NY2d 247, 256). As the presumption of constitutionality is accorded to statutes in the area of taxation, "[t]he burden is on the one challenging the distinction to show by the 'clearest demonstration that [the statute] discriminates invidiously' as well as 'to negate every conceivable basis which might support it'" (*Prodell v State of New York*, 222 AD2d 178, 181, *appeal dismissed* 88 NY2d 1064, *lv denied* 89 NY2d 809, *cert denied* 522 US 810, quoting *Matter of Cove Hollow Farm v State of N. Y. Tax Commn.*, 146 AD2d 49, 53). We find that petitioner failed to meet this heavy burden.

In reaching this conclusion, we cannot ignore petitioner's contention that the imposition of a surcharge upon its members and not on one of its direct competitors—"the physicians' in-office laboratories"—might well destroy its competitive edge since the changing health care system now mandates that all services, including testing, be performed at the most cost-effective site. However, the statute clearly conditions its exemption for physician's laboratories for only so long as they exclusively service their own patients. If such adjunct laboratories seek to compete with petitioner's members or hospital laboratories, they would be required to obtain a DOH permit which would then subject them to the surcharge (*see, Matter of Union Carbide Chems. & Plastic Co. v Tax Appeals Tribunal*, 213 AD2d 807, 809, *appeal dismissed* 85 NY2d 1031, *lv denied*

---

**3.** Of the 32.18% surcharge, 2% may be retained by a provider, including clinical laboratories, for administrative expenses.

86 NY2d 710). Finding no invidious discrimination in the distinction between providers designated to fund the surcharge, we must conclude that the statutory scheme is rationally related to a legitimate State purpose. It may well have been determined by the Legislature that the inclusion of all laboratories would have been an overbearing administrative burden (*see, Trump v Chu*, 65 NY2d 20, 27, *appeal dismissed* 474 US 915). Hence, the more appropriate forum to address what appears to be petitioner's legitimate financial concerns must be the Legislature and not the judiciary.

■ Petitioner's contention that DOH has erroneously interpreted HCRA to require that its members pay the requisite surcharge for medical services received by its patients, regardless of whether they ultimately paid for their services, is unfounded. DOH interprets Public Health Law § 2807-j (1), as defined by Public Health Law § 2807-j (2) (a) and (3) (c), to require that petitioner and its members remit a *proportionate* amount of the surcharge from any payment it actually receives and does not hold petitioner's members liable for surcharges that go unpaid. According deference to DOH as the agency responsible for the statute's administration (*see, Matter of Howard v Wyman*, 28 NY2d 434; *Matter of Pallette Stone Corp. v State of N. Y. Off. of Gen. Servs.*, 245 AD2d 756), and finding DOH's interpretation neither arbitrary nor capricious, we need not address petitioner's remaining contentions.

Guided by the standards which we are constrained to apply, we affirm the judgment of Supreme Court.

MIKOLL, J. P., MERCURE, CREW III and YESAWICH JR., JJ., concur.

Ordered that the judgment is affirmed, without costs.