UNITED FOOD AND COMMERCIAL WORKERS UNIONS AND FOOD EMPLOYEES BENEFIT FUND, Plaintiff,

v.

Barbara A. DEBUONO, Individually and as Commissioner of Health of the State of New York; and Does 1 through 20, Defendants.

No. 98–CV–459 (LEK/DRH).

United States District Court, N.D. New York.

March 29, 2000.

Blitman & King, LLP, Syracuse, NY (James R. LaVaute, Harry B. Bronson, of counsel), Schwartz, Steinsapir, Dohrmann & Sommers, LLP, Los Angeles, CA (William T. Payne, of counsel), for the plaintiff.

Hon. Eliot L. Spitzer, Attorney General of the State of New York, Litigation Bureau, Albany, NY (James B. McGowan, Assistant Attorney General, of counsel), for the defendants.

### MEMORANDUM–DECISION AND ORDER

KAHN, District Judge.

Plaintiff, United Food and Commercial Workers Unions and Food Employees Benefit Fund ("Fund"), argues that New York's surcharge system under the Health Care Reform Act ("HCRA") violates the Commerce and Due Process Clauses of the United States Constitution and is actionable pursuant to 42 U.S.C. § 1983.

## I. BACKGROUND

Plaintiff Fund is headquartered in Cypress, California and is an "employee benefit plan" as that term is defined by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1002(1). (*See* Thompson Aff. at ¶ 2.)

Plaintiff alleges that almost 36,000 employees or retired employees, plus their families, are entitled to medical coverage from the self-insured indemnity program operated by the Fund. (*See* Thompson Aff. at ¶ 3.) Accordingly, the Fund pays some or all of the hospital bills and other medical expenses incurred by these participants. Such bills are received by the Fund in California and are paid through transactions in interstate commerce; generally, the U.S. Postal Service. (*See* Thompson Aff. at ¶ 3.) The Fund has no offices or employees in New York and allegedly maintains no contracts with any insurance organizations or other businesses in the State of New York. (*See id.*)

At times, a person entitled to coverage from the Fund requires hospitalization while traveling in or attending school in New York or after relocating to New York. (*See id.* at ¶ 5.)

New York's HCRA imposes surcharges on charges for patient care by state licensed providers (e.g., hospitals, laboratories and outpatient centers). *See* N.Y.Pub. Health Law § 2807–j.1–a(a) (McKinney 1999–2000). The principal surcharge is for the stated purpose of funding uncompensated care within the State of New York. Anyone responsible for payment of a provider's bill is responsible for paying the surcharge, including any "third-party pay-

or;" a term that apparently includes the Fund. *See* N.Y.Pub. Health Law § 2807-j.1–a(c) (McKinney 1999–2000).

If the third-party payor registers with the State pursuant to the "Registration Option," the surcharge of a provider's bill equals 8.18% of the total hospital bill. In addition to submitting the 8.18% surcharge directly to the State of New York, a third-party payor is required to submit monthly reports, submit monthly payments toward an additional annual assessment, permit the State to audit the Fund's records and consent to jurisdiction of the New York Courts.

If a third-party payor like the Fund opts not to register with the State and submit to the foregoing conditions, the surcharge will be collected by the health care provider who will then submit the surcharge to the State. Under this "Non-registration Option," the surcharge will include (a) the original 8.18%, plus (b) a 24% additional surcharge, plus (c) a special assessment varying between 2.36% and 25.09%, depending on the locality of the health care provider.

Plaintiff Fund has not registered with the State of New York and, consequently, is subject to the higher surcharges associated with the Non-registration Option. Plaintiff maintains that the additional costs required of the Non-registration Option are punitive and that the additional costs coerce plans to register with the State and become subject to burdensome regulations. Plaintiff maintains that these punitive and coercive costs are imposed disproportionately on out-of-state payors who have little or no contact with the State of New York and, consequently, violate the Commerce and Due Process Clauses of the Constitution.

Defendants maintain that the disparity in surcharges does not discriminate against out-of-state payors. In support of this argument, Defendants allege that "as of May, 1998, nearly 90% of [payors electing the Registration Option were] located outside of New York." (Pelligrini Aff. at

¶ 19.) Defendants also maintain that the surcharge system is not punitive in that the "Non-registration Option" provides a more economic and practical alternative for payors, like Plaintiff, who have few participants receiving care in New York.

## III. DISCUSSION

Presently before the Court is Plaintiff's motion for partial summary judgment and for a permanent injunction as well as Defendants' cross-motion to dismiss for failure to state a claim. Defendants also move to strike statements set forth in Plaintiff's "Statement of Material Facts." In the alternative, Defendants cross-move for summary judgment in favor of Defendant DeBuono pursuant to Federal Rule of Civil Procedure 56(b) and (c).

### A. Jurisdiction

Although neither party's motion papers address the issue of jurisdiction, this Court is obligated to raise the issue of subject matter jurisdiction sua sponte.

The Tax Injunction Act ("TIA") provides that "[t]he district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." 28 U.S.C. § 1341. The Act "reflects 'the fundamental principle of comity between federal courts and state taxation.'" *Fiedler v. State of New York*, 925 F.Supp. 136, 138 (N.D.N.Y.1996) (McAvoy, C.J.) (quoting *Fair Assessment in Real Estate Ass'n v. McNary*, 454 U.S. 100, 103, 102 S.Ct. 177, 70 L.Ed.2d 271 (1981)), *aff'd* 199 F.3d 1322 (2d Cir.1999). *See also National Private Truck Council v. Oklahoma Tax Comm'n*, 515 U.S. 582, 586–87, 590–92, 115 S.Ct. 2351, 132 L.Ed.2d 509 (1995). Furthermore, "[a]lthough the TIA mentions only injunctions, its policy of comity bars declaratory judgment and 42 U.S.C. § 1983 damage actions as well." *Fiedler,* 925 F.Supp. at 138 (citing *Fair Assessment* at 105, 102 S.Ct. 177). Only when the

state remedy is inadequate may a federal court interfere with the state's tax process. *See id.*

■ Two conditions need be present before the TIA will strip a federal court of jurisdiction: (a) the payment at issue must constitute a "tax" and (b) the state must provide an available remedy to plaintiff that is "plain, speedy and efficient." *Travelers Ins. Co. v. Cuomo*, 14 F.3d 708, 713 (2d Cir.1993), *rev'd on other grounds,* 514 U.S. 645, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995); *Hexom v. Oregon Dep't of Transp.,* 177 F.3d 1134, 1135–37 (9th Cir.1999); *Cumberland Farms, Inc. v. Tax Assessor, State of Maine,* 116 F.3d 943, 945–46 (1st Cir.1997).

### 1. Tax

What is a tax? The leading case that analyzes this question is *San Juan Cellular Tel. Co. v. Public Serv. Comm'n,* 967 F.2d 683 (1st Cir.1992). The *San Juan* Court annunciated an oft cited analytical framework for determining whether a particular payment is a tax. The Court wrote that:

> Courts have had to distinguish "taxes" from regulatory "fees" in a variety of statutory contexts. Yet, in doing so, they have analyzed the legal issues in similar ways. They have sketched a spectrum with a paradigmatic tax at one end and a paradigmatic fee at the other. The classic "tax" is imposed by a legislature upon many, or all, citizens. It raises money, contributed to a general fund, and spent for the benefit of the entire community. The classic "regulatory fee" is imposed by an agency upon those subject to its regulation. It may serve regulatory purposes directly by, for example, deliberately discouraging particular conduct by making it more expensive. Or, it may serve such purposes indirectly by, for example, raising money placed in a special fund to help defray the agency's regulation-related expenses.

> Courts facing cases that lie near the middle of this spectrum have tended (sometimes with minor differences reflecting the different statutes at issue) to emphasize the revenue's ultimate use, asking whether it provides a general benefit to the public, of a sort often financed by a general tax, or whether it provides more narrow benefits to regulated companies or defrays the agency's costs of regulation.

*San Juan,* 967 F.2d at 685 (citations omitted).

Section 2807–j of HCRA, the provision currently at issue, provides, in part:

> funds shall be deposited and credited to **a special revenue-other fund to be established by the comptroller.** To the extent of funds appropriated therefore, the commissioner shall make payments to general hospitals related to **bad debt and charity care** pursuant to section twenty-eight hundred seven-k of this article.

> \*   \*   \*   \*   \*   \*

> funds shall be accumulated in a health care initiatives pool established by the commissioner, for distribution in accordance with section twenty-eight hundred seven-*l* of this article. . . .

N.Y.Pub. Health Law § 2807–j.9(a), (b) (McKinney 1999–2000) (emphasis added).

Applying *San Juan* to the present case reveals that the surcharge at issue bears attributes of both a "classic tax" and a "regulatory fee." Specifically, the surcharge resembles a tax in that it is imposed by the state legislature, not a regulatory agency. Similarly, the surcharge is imposed on many individuals, including every individual, resident or not, who receives health care from a designated provider of service in the State of New York. *See* N.Y.Pub. Health Law § 2807–j.1–a(a) (McKinney 1999–2000). Conversely, the surcharge also bears attributes of a regulatory fee. As Plaintiff maintains, and Defendant concedes, one of the purposes of the higher costs associated with the Non-

registration Option is to discourage particular conduct—to wit, choosing the Non-registration Option.[1] This characteristic is more indicative of a regulatory fee.

Based on the foregoing characteristics, the surcharge lies near the middle of the spectrum between the classic tax and the regulatory fee. As such, the Court proceeds to consider the revenue's "ultimate use," and considers "whether [the surcharge] provides a general benefit to the public, of a sort often financed by a general tax, or whether it provides more narrow benefits to regulated companies or defrays the agency's costs of regulation." *San Juan,* 967 F.2d at 685.

The purpose of HCRA funds is not to provide narrow benefits to a select group or to defray costs of agency regulation. To the contrary, one of HCRA's chief goals is to remedy the perceived evils of uncompensated care for the indigent of New York.[2] In its statement of Legislative Intent, the Legislature noted that HCRA would "maintain or enhance health care access, quality and availability for populations and areas where market forces are not effective; [and] promote access to primary care." (Pellegrini Aff. at ¶ 12 (citing Ch. 639 of the Laws of 1996, § 1).) Specifically, HCRA surcharges are used to ensure that the uninsured "medically indigent" are not denied essential medical care because of their inability to pay. These monies are used to fund "public goods" related to health care in New York and to finance health care programs that are not otherwise funded, or are inadequately funded, by existing health service payment systems. These public goods include charity care, funding for diagnostic and treatment centers, ambulatory surgery centers and clinical laboratories, funding for uninsured or underinsured children and medical education assistance. Finally, the revenues are designed to distribute more equitably the burdens of indigent health care amongst hospitals in the State of New York. *See* § 2807-j; 2807-l. (*See* Pellegrini Aff. at ¶¶ 3–5.)

■ Based on the foregoing, the Court concludes that HCRA surcharges serve general revenue raising purposes and therefore constitute "taxes" for the purposes of the TIA. *See Travelers Insurance,* 14 F.3d at 713–14 (analyzing N.Y.Pub. Health Law § 2807-c (McKinney 1999–2000), a similar statutory provision, and concluding for substantially similar reasons that surcharges thereunder were taxes for purposes of the TIA); *New York State Clinical Lab. Ass'n Inc. v. DeBuono,* 250 A.D.2d 95, 679 N.Y.S.2d 192, 194 (N.Y.A.D.1998) (treating HCRA surcharges as taxes by applying equal protection test applicable to tax statutes to § 2807-j).

## 2. Plain, Speedy and Efficient State Remedy

■ As noted, the TIA will not apply if there is no plain, speedy and efficient state remedy. The test to determine whether a state remedy is satisfactory for purposes of the TIA asks whether the state remedy is "adequate." *United States Steel Corp. v. Multistate Tax Comm'n,* 367 F.Supp. 107, 115 (S.D.N.Y.1973) (citing *Hillsborough v. Cromwell,* 326 U.S. 620, 624, 66 S.Ct. 445, 90 L.Ed. 358 (1946)). An "adequate" state remedy has not been construed to mean a "perfect" one; indeed, § 1341 will require federal abstention in

---

1. Defendant concedes that "the large differential between [the Registration Option and the Non-registration Option] is to create a strong economic incentive for third party payors to elect to pay into the public goods pool directly, thus easing the administrative burden on providers in complying with the surcharge system." (Pellegrini Aff. at ¶ 14.)

2. The Task Force advocating health reforms reflected in HCRA recommended that any new health care financing system should include "a broad-based financing vehicle to raise about $2 billion to support public policy goals unlikely to be addressed through negotiated rates, including 'uncompensated care. . . .'" (Pellegrini Aff. at ¶ 11 (citing Task Force Report at 22).)

favor of an adequate state remedy even if that remedy is less satisfactory than the remedy available in federal court. The remedy must, however, be reasonably "certain" before the TIA may be invoked. *First United Methodist Church of Syracuse v. City of Syracuse,* 489 F.Supp. 185, 187–88 (N.D.N.Y.1980) (Munson, J.).

■ With the foregoing in mind, the Court concludes that Civil Practice Law and Rules § 3001 (declaratory judgment) affords Plaintiff with a plain, speedy and effective state remedy that satisfies the requirements of the TIA. *See Tully v. Griffin,* 429 U.S. 68, 75, 97 S.Ct. 219, 50 L.Ed.2d 227 (1976) (stating that "New York courts have consistently held that . . . a declaratory judgment[ ] may be used when the claim is that the tax is unconstitutional"); *Schulz v. Washington County Bd. of Supervisors,* No. 98–CV–167, 1998 WL 566794, at *2 (N.D.N.Y. 1 Sep. 1998) (Scullin, J.); *Scallop Corp. v. Tully,* 546 F.Supp. 745, 752 (N.D.N.Y.1982) (McCurn, J.) (citing *Tully v. Griffin* ).

## CONCLUSION

After a careful review of the entire file, submissions of the parties and the applicable law, it is hereby

ORDERED that the Plaintiff's motion for partial summary judgment and for a permanent injunction is **DENIED;** and

IT IS FURTHER ORDERED that the Defendants' cross-motion for summary judgment is **DENIED;** and

IT IS FURTHER ORDERED that the entire action is **DISMISSED** for lack of subject matter jurisdiction, and

IT IS FURTHER ORDERED that this case is **CLOSED,** and

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this order by regular mail upon the parties to this action.

IT IS SO ORDERED.